IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MORGAN RITTER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>K&K HOLDINGS OF FORT WAYNE, LLC d/b/a THE HAREM OF FORT WAYNE; MICHAEL K. FOX; KATHERINE H. FOX; and DOE DEFENDANTS 1-10.<br><br>Defendants. | Civil Action No.: 1:20-cv-00224<br><br>**CLASS/COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Morgan Ritter ("Plaintiff"), individually and on behalf of all similarly situated employees, brings this class/collective action lawsuit against Defendants K&K Holdings of Fort Wayne, LLC d/b/a The Harem of Fort Wayne, Michael K. Fox, Katherine H. Fox, and Doe Defendants 1-10 (collectively, "Defendants") seeking to recover for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA" or the "Act") and Indiana common law. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1. As explained herein, under applicable employment laws, all employees are entitled to a defined minimum wage and are protected from having improper deductions taken from their wages, including their tips. However, Defendants (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors." Consequently, Defendants failed to pay Dancers at least the applicable minimum wage. Further, Defendants improperly collected a portion of the tips Plaintiff and other Dancers receive from

customers. As set forth herein, such conduct is in violation of applicable federal wage and hour laws and Indiana common law.

2. Dancers who work, or have worked, for Defendants, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L. 465, 466 (1999).

3. Accordingly, adult entertainment clubs such as those operated by Defendants are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4. Over the past two decades, the United States Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5. Despite these significant strides, adult night clubs across the country still routinely deny Dancers the basic protections they are accorded under state and federal law. Indeed, Defendants' Club is no exception. As set forth herein, Defendants' Club regularly deprives Dancers of their rights under federal law. Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

6. Plaintiff brings this action as a collective action to recover unpaid wages, including inappropriately withheld tips, pursuant to the FLSA, as amended, 29 U.S.C. § 201 *et seq*.

7. In particular, Plaintiff brings this suit, pursuant to Section 216(b) of the FLSA, on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "FLSA Class").

8. Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to Indiana Common Law.

9. Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants in the State of Indiana during the statutory period covered by this Complaint (the "IN Class").

10. The FLSA Class and the IN Class are hereafter collectively referred to as the "Classes."

11. Plaintiff alleges on behalf of the FLSA Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to pay the mandatory minimum wage; (ii) entitled to the tips that Defendants withheld from them, in violation of 29 U.S.C. § 203(m)(2)(B); and (iii) entitled to liquidated damages pursuant to 29 U.S.C. § 216(b).

12. Plaintiff alleges on behalf of the IN Class that they are entitled to restitution of all amounts inappropriately withheld and/or deducted by Defendants from the gratuities of the IN Class.

## PARTIES

13. Plaintiff Morgan Ritter is a resident and citizen of the State of Indiana who was employed by Defendants as a "Dancer" at The Harem of Fort Wayne (the "Harem" or the "Club") located at 1002 N Coliseum Blvd, Fort Wayne, Indiana 46805 for approximately six to eight months from approximately January 2018 to the fall of 2018.

3

14. While employed by Defendants, Plaintiff was improperly classified as an independent contractor and, consequently, Defendants failed to compensate Plaintiff properly for all hours worked.

15. Plaintiff consented in writing to be a Plaintiff in this action and has filed her executed Consent to Sue.

16. Defendant K&K Holdings of Fort Wayne, LLC d/b/a/ The Harem of Fort Wayne is an Indiana Limited Liability Company with its principal address located at 1002 N Coliseum Blvd, Fort Wayne, Indiana 46805. Upon information and belief, K&K Holdings of Fort Wayne, LLC owns and operates The Harem of Fort Wayne located at 1002 N. Coliseum Blvd, Fort Wayne, Indiana 46805.

17. Michael K. Fox is a citizen of the State of Indiana and is identified on the corporate filings of K&K Holdings of Fort Wayne, LLC as the entity's General Partner. As the entity's General Partner, upon information and belief, Defendant Fox exercises sufficient control over the labor policies and practices of The Harem entity complained of herein to be considered the employer of Plaintiff and the Class for purposes of the FLSA.

18. Katherine H. Fox is a citizen of the State of Indiana and is identified on the corporate filings of K&K Holdings of Fort Wayne, LLC as the entity's Registered Agent. As The Harem's owner, upon information and belief, Defendant Katherine H. Fox is responsible for implementing the labor policies and practices implemented at The Harem complained of herein and exercises sufficient control over The Harem to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and Indiana common law.

19. Upon information and belief, at all relevant times, Defendants' annual gross volume of sales made or business done was not less than $500,000.00.

20. At all relevant times, Defendants have transacted business, including the employment of Dancers, within the State of Indiana, including within this judicial district.

21. Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.

22. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned conspiracy. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

24. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

26. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

27. The crux of the FLSA is, *inter alia*: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; and (ii) that all tips earned by an employee are the property of the employee and may not be withheld by the employer.

28. Contrary to these basic protections, Defendants' Club improperly classifies its Dancers, including Plaintiff, as "independent contractors" despite Defendants' near total control over them. Consequently, Dancers are and have been: (i) deprived of the mandated minimum wage for all hours they worked; (ii) forced to improperly share a percentage of their tips with Defendants' Club; and (iii) forced to reimburse Defendants' Club for their ordinary business expenses.

29. Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendants' location at 1002 N Coliseum Blvd, Fort Wayne, Indiana 46805, operating under the name "The Harem of Fort Wayne."

30. Defendants operate The Harem under uniform policies applicable to all the members of the Classes. Through these policies and procedures, Defendants maintain significant supervision and control over Plaintiff and members of the Classes.

31. Notwithstanding Defendants' classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendants have over their Dancers, Dancers are legally Defendants' employees.

### Hiring, Firing, and Scheduling

32. Defendants have the power to hire and fire Dancers at will, and have rules governing the conditions under which Dancers work.

33. Plaintiff's schedule varied during the course of her employment, although she typically worked 5-6 days a week. While not on a set schedule, the Club preferred Dancers to

have a routine schedule. Plaintiff was required to show up at the start of her shift, which was usually 8:00 pm.

34. Upon arrival at the Club, Dancers are required to check in with the Club's DJ.

35. Defendants require that all Dancers stay until the Club is closed for the night. Defendants would pressure the Dancers to stay until close and would express outrage and disapproval if a Dancer would leave prior to close.

36. When the Club closes at either 3:00 a.m. or 4:00 a.m., all Dancers must wait and "check-out" with the Club's DJ. The check-out process could take as long as thirty minutes, meaning that Dancers would not leave the Club until 4:30 a.m. on some nights. The Dancers are not compensated in any way for the time they spend waiting to check-out. During check-out, the Dancers would have to tip-out a significant portion of their tips from that night to the DJ as described in greater detail below.

## House Fees & Fines

37. Rather than pay Dancers the applicable minimum wage, Defendants classify their Dancers as independent contractors and require their Dancers to pay Defendants in order to work at Defendants' establishment. Consequently, Defendants do not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked.

38. Despite routinely charging customers anywhere from $10-25 as a "cover fee" at the door, Defendants retain all of that income and do not pay Dancers any wages.

39. Typically, there are "House Fees" for each shift worked. This fee was different each night depending on several factors, i.e. how busy the Club was that night and number of staff working. At minimum, the fee was $20 per night. However, this minimum fee was only on slow nights. The "House Fee" could raise to a high of $80 on nights when the Club is busy.

40. Dancers must pay a "House Fee" every night they work regardless of the amount of tips they receive during their shift. On nights in which a Dancer does not make enough in tips to cover the fees, the Club would still take between one-third and one-half of the Dancer's tips. Defendants' system of fees, fines, and mandatory tips creates a realistic scenario wherein a Dancer may finish a shift with less than fifty percent (50%) of the tips that she earned on any given night.

## Tip Retention & Mandatory Tip Outs

41. Tips received by an employee belong to the employee and an employer has no ownership interest in said tips. Section 203(m)(2)(B) of the FLSA specifically provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." According to the DOL's regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

42. Despite the law's clear requirements, Defendants unlawfully retain a portion of tips Dancers received from Defendants' customers.

43. Moreover, Defendants control the amount Dancers may charge customers. Defendants mandate that a Dancer must charge the same fees to each customer for her services during the same night. By way of example, Defendants maintain a policy that a Dancer can charge a particular rate each night for private performances, but the Club requires that Dancer to charge the same rate for each customer during that same night.

44. Defendants also require Dancers to distribute the funds received for each category of private performance. Whether a Dancer performed a "private dance" or used the "VIP Room,"

8

the Dancer would have to tip the bouncer $20.00 per dance and the Defendants $10.00-$15.00 for each performance.

45. Dancers usually collect money from customers after completion of the private dances. If a customer refuses to pay or leaves the Club without paying, the Dancer would still be required to tip the bouncer $5.00, despite the bouncer providing no assistance to the Dancers with the enforcement and collection of the fee from customers.

46. Defendants also subject Dancers to mandatory tip-outs. That is, Dancers are required to share their tips with certain of Defendants' employees. Importantly, the individuals with whom Defendants require its Dancers to share their tips do not provide customer service or receive tips themselves.

47. During each night, various members of the Club's staff, including the DJ and the "House Mom," would keep track of the number of performances for each Dancer and would tally how much each Dancer owed the Club. At the end of the night, each Dancer would "check-out" with the DJ who would collect the amount that was owed to the Club. Then, the DJ would divide that payment to staff members (i.e., House Mom, bartenders, bouncers, and others) with the majority being kept by the Club. A Dancer could not leave without tipping-out the correct amount. On some nights, this could total more than fifty percent (50%) of a Dancer's tips.

48. Upon information and belief, Defendants use these mandatory Dancer tip-outs to offset Defendants' ordinary business expenses. Stated another way, Defendants require Dancers to share their tips with individuals so that Defendants can then reduce their labor costs by having the Dancers supplement the compensation Defendants pay their other employees, including the DJ and House Mom who effectively act as supervisors of the Dancers.

49. The aforementioned amounts are required minimum tip-outs, and Defendants require Dancers to pay all tips by the end of their shift, regardless of how much money the Dancer has earned during the shift.

50. Dancers often felt pressured and controlled by the managers, the DJ, and the House Mom at Defendants' Club. Plaintiff and other Dancers believed managers, bouncers, the DJ, and the House Mom were closely monitoring all of their transactions. For example, the Club's staff kept track of the number of each Dancer's performances, how much each Dancer charged per performance, and kept a tally of how much was owed to the Club. In doing so, they pressured the Dancers to tip them accordingly based on the above-referenced factors. As previously stated, a Dancer was not allowed to leave without paying the correct amount that was owed to the Club.

51. As a result of the mandatory House Fees, required tip-outs, and assessed fines, Dancers often left the Club with significantly less money than they earned in tips, and never received compensation from the Club, despite the number of hours worked.

### Additional Control

52. As described below, Defendants exercise significant control over the Dancers' work environment through a variety of policies and rules.

53. Defendants require Dancers to wear certain types of clothes. Dancers are required to have their hair and makeup done, to look nice for their performances, and additionally are required to wear a thong or other lingerie that exposed the underneath skin during all of their performances. Defendants also prohibit certain types of clothes. As an example, the Club does not allow any feathery items. Defendants exercise authority over Dancers' apparel by initially giving a warning and then refusing to let a Dancer perform if her clothing does not meet

Defendants' requirements. Defendants require each Dancer to bring multiple outfits to work so that she could change if the House Mom disapproved of her initial outfit. Defendants do not reimburse Dancers for the cost of their apparel and do not pay for the cost of laundering or maintaining these required outfits. In addition, Defendants do not reimburse Dancers for the cost of their makeup, and do not compensate Dancers for time spent applying makeup.

54. Dancers are required to change in a specific dressing area, which is an open locker room, designated by management and security. Moreover, management and staff can check on Dancers while Dancers are changing, thereby seeing them fully naked, denying Dancers even a modicum of privacy while changing attire.

55. A Dancer's stage performance must comply with certain rules set by Defendants. Dancers are required to go on stage in a rotation when called by the DJ and the House Mom. The Club's DJ controls the songs played. Dancers cannot choose songs or even request the genre of music. The DJ exercises full and final control over the music selection, and Dancers are forced to dance to songs chosen solely by the DJ.

56. Dancers are required to dance between two and three songs in a row on the main stage. When not performing on stage or providing private performances, Dancers are required to be on the floor. Dancers are, therefore, required by Defendants to perform continual physical activity with only minimal breaks for food, water, or recuperation.

57. At all times while on the floor, Dancers must adhere to a strict policy set by Defendants. For example, a Dancer is forbidden to have or use her cell phone and talk to other co-workers while on the floor.

58. In short, Defendants' Club maintains significant supervision and control over Plaintiff and members of the Classes and sets the rules governing the conditions under which Dancers work. These rules are applied uniformly to Plaintiff and all other Dancers.

59. Further, Defendants' Club determines the method of payment Dancers receive, including but not limited to the percentage of tips that Defendants' Club retains and the fact that Dancers do not receive any wages while working at the Club.

60. Defendants have been unjustly enriched to the detriment of the Classes by: (i) requiring Dancers to pay money out of their tips to subsidize the ordinary business expenses of the club; (ii) requiring Dancers to forfeit a portion of their tips to Defendants' Club; (iii) paying Dancers less than the mandated minimum wage (indeed, no wages whatsoever) despite exercising near-total control over Dancers' manner of work and their work environment; and (iv) requiring Dancers to advertise and promote the Club, without compensating Dancers for their time.

61. At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of the Harem.

62. Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of Defendants.

63. While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery. Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings this action on behalf of the FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the IN Class for claims under the Indiana common law. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims brought pursuant to Indian common law may be pursued by all similarly situated persons who do not opt-out of the IN Class pursuant to Fed. R. Civ. P. 23.

65. Upon information and belief, the members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of the Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at least, close to one hundred individuals in the Classes.

66. Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

67. The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants' Club and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

68. Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    (a)    whether Plaintiff and Dancers were improperly classified as independent contractors by Defendants;

    (b)    whether Defendants failed to pay Dancers statutorily required wages for each hour worked;

      (c)      whether Plaintiff and Dancers were required to pay Defendants, in cash, fees for each shift worked;

      (d)      whether Defendants improperly retained any portion of Plaintiff's and Dancers' tips;

      (e)      whether Plaintiff and members of the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

      (f)      whether Plaintiff and members of the Class are entitled to restitution and/or liquidated damages; and

      (g)      whether Defendants are liable for attorneys' fees and costs.

69. Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are aligned with those of the members of the Classes. She has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

70. The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

71. Plaintiff and the Classes that she seeks to represent have suffered and will continue to suffer irreparable damage from Defendants' illegal pay policies, practices, and customs.

72. Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

73. In addition, Defendants have been unjustly enriched to the detriment of the IN Class by requiring Dancers to pay money out of their tips to pay for the ordinary business

expenses of Defendants, including requiring Dancers to forfeit a portion of their tips to pay Defendants DJ and House Mom.

## FIRST CLAIM FOR RELIEF
### Fair Labor Standards Act – Minimum Wage Violations
### (On Behalf of the FLSA Class)

74. Plaintiff, on behalf of herself and the FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

75. Upon information and believe, at all relevant times Defendants have had gross annual revenues in excess of $500,000.00.

76. At all relevant times, Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

77. At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the FLSA Class members within the meaning of the FLSA.

78. Pursuant to Defendants' compensation policies, rather than pay Dancers the federally mandated minimum wages, Defendants improperly classify Plaintiff and other Dancers as independent contractors.

79. As a result of Defendants' willful exercise of near-total control over Dancers' manner of work and their work environment, Defendants' Club was required to pay Plaintiff and the members of the FLSA Class the mandated minimum wage for all hours worked.

80. Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. § 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81. Due to Defendants' FLSA violations, Plaintiff and the members of the FLSA Class are entitled to recover from Defendants: compensation for unpaid wages; an additional

15

equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### Fair Labor Standards Act – Withholding of Tips
### (On Behalf of the FLSA Class)

82. Plaintiff, on behalf of herself and the FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

83. Upon information and believe, at all relevant times Defendants have had gross annual revenues in excess of $500,000.00.

84. At all relevant times, Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85. At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the FLSA Class Members within the meaning of the FLSA.

86. Pursuant to their labor policies, Defendants unlawfully retain portions of tips earned by Dancers by forcing them to pay Defendants' supervisors and /or managers, including the DJ and House Mom, a portion of their tips.

87. Pursuant to 29 U.S.C. § 203(m)(2)(B) an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

88. Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. § 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

89. Due to Defendants' FLSA violations, Plaintiff, and the members of the FLSA Class are entitled to recover from Defendants all such tips unlawfully kept by Defendants and an additional equal amount as liquidated damages.

### THIRD CLAIM FOR RELIEF
### Indiana Common Law – Unjust Enrichment
### (On Behalf of the IN Class)

90. Plaintiff, on behalf of herself and the IN Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

91. Plaintiff and the members of the IN Class were employed by Defendants within the meaning of Indiana Common Law.

92. At all relevant times, Defendants have a willful policy and practice of denying Dancers their full share of gratuities.

93. Throughout the class period covered by this Complaint, Defendants have had a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount.

94. Defendants retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

95. Defendants have been unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

96. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff, and the members of the IN Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendant of the benefits conferred by Plaintiff and the IN Class.

97. Plaintiff, on behalf of herself and the members of the IN Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of herself and all other similarly situated members of the FLSA Class and IN Class, prays for relief as follows:

a) Designation of this action as a collective action on behalf of the FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all FLSA Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

b) Designation of Plaintiff as representative of the FLSA Class;

c) Designation of the action as a class action under F.R.C.P. 23 on behalf of the IN Class;

d) Designation of Plaintiff as representative of the FLSA Class and the IN Class;

e) Designation of Plaintiff's counsel as counsel for the FLSA Class and IN Class;

f) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and Indiana Common Law;

g) An award of unpaid minimum wages to Plaintiff and the members of the FLSA Class;

h) An award of liquidated damages to Plaintiff and the FLSA Class;

i) An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

j) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: June 12, 2020    Respectfully submitted,

*s/Lynn Toops*
Lynn A. Toops
Lisa M. La Fornara
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

Edward Ciolko, Esq.
Gary F. Lynch, Esq.
James P. McGraw, Esq.
Elizabeth Pollock-Avery, Esq.
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
eciolko@carlsonlynch.com
glynch@carlsonlynch.com
jmcgraw@carlsonlynch.com

Gerald D. Wells, III
Robert J. Gray
**CONNOLLY WELLS & GRAY LLP**
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (610) 822-3700
Facsimile: (610) 822-3800
gwells@cwglaw.com
rgray@cwglaw.com